**IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA**

| | | |
|---|---|---|
| **PAULETTE FOSTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CV- 2005-009** |
| | ) | |
| **AMERICAN MEDICAL SECURITY, UNITED WISCONSIN LIFE INSURANCE COMPANY, AMSOUTH BANK, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

FILED IN CIRCUIT CLERKS OFFICE MACON COUNTY, AL
2005 FEB 14 P 3:08
EDDIE D. MALLARD CIRCUIT CLERK

**DEFENDANTS UNITED WISCONSIN LIFE INSURANCE COMPANY AND AMERICAN MEDICAL SECURITY, INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants American Medical Security, Inc. ("AMS") and United Wisconsin Life Insurance Company ("UWLIC") (collectively referred to hereinafter as "Defendants") submit the foregoing memorandum in support of their motion to dismiss Plaintiff's Complaint:

## ARGUMENT

### I. THE ENTIRE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFF'S CLAIMS ARE WITHIN THE PRIMARY JURISDICTION OF THE ALABAMA DEPARTMENT OF INSURANCE.

The Alabama Department of Insurance ("DOI") has unique knowledge and expertise with respect to the issues involved in this case. As a result, the DOI is the proper forum to hear Plaintiff's claims under the doctrine of primary jurisdiction. Primary jurisdiction "comes into play whenever enforcement of the claims requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Fraternal Order of Police v. Entrekin*, 314 So. 2d 663, 671 (Ala. 1975). In such situations, courts should refer issues to the administrative body for its views. *Id.* The goal of the doctrine is to "ensure uniformity and consistency in dealing with matters entrusted to an administrative

body." *Id.* When deciding whether the administrative body should hear the claim, it must be considered whether referral to the agency is preferable because of its specialized knowledge or expertise in dealing with the matter. *Id.* In addition, if the review of the controversy by the administrative body will assist the trial court in its adjudicatory function, obtaining the views of the administrative body is preferable. *Id.*

Here, Plaintiff directs her claims at Defendants' former practice of "tier rating" on the Med One health insurance policies.[1] The DOI, pursuant to its authority under the Alabama Trade Practices Act, investigated tier rating in 1999. Following the investigation, a consent order was entered between the DOI and Defendants, and the DOI began requiring Defendants to submit rates on the Med One policy to the DOI for approval. (*See* "Consent Order dated October 1, 1999" attached hereto and referred to herein as Exhibit A). As a result of the consent order and the events which led to the consent order, the DOI has "specialized knowledge and expertise with respect to the issues at hand." (*See* Exhibit A). This specialized knowledge and expertise makes the DOI the preferable forum for Plaintiff's claims.

The same reasoning has resulted in the dismissal of identical claims against the same Defendants in another case. *Jackson v. United Wisconsin Life Ins. Co.*, No. CV-98-103, slip op. (Ala. Cir. Ct. Bullock Cty. Apr. 27, 2001) (*see* opinion attached hereto as Exhibit B). In *Jackson*, the trial court dismissed a purported class action brought against the same Defendants because the allegations fell within the DOI's primary jurisdiction under the Alabama Trade Practices Law. The *Jackson* complaint alleged -- similar to the Complaint here -- that the plaintiff contracted to purchase group insurance with group insurance premiums, but later claimed her policy was subjected to "tiering" based upon individual factors. *Id.* at 4. The circuit

---

[1] Interestingly, plaintiff takes issue with the tier-rating system formerly utilized by Defendants; however, plaintiff's premiums were never calculated under this method.

court held that the claims asserted by the plaintiff were within the "broad authority" of the DOI under the Alabama Trade Practices Law, which "d[oes] not provide for a private cause of action" but rather "designates the commissioner as the enforcer" in a realm in which "this court cannot usurp the commissioner's power . . . ." *Id.* at 2-3. The complaint was dismissed in its entirety because "[t]he plaintiff ha[d] failed to exhaust her administrative remedies through the Alabama Department of Insurance." *Id.* at 4.

The *Jackson* decision is consistent with prior decisions by Alabama courts. In *Allen v. State Farm Fire & Cas. Co.*, 59 F. Supp. 2d 1217, 1224 (S.D. Ala. 1999), for instance, the U.S. District Court for the Southern District of Alabama dismissed a purported class action asserting claims for, *inter alia*, breach of contract, conspiracy and unjust enrichment because the claims were within the DOI's primary jurisdiction. *Id.* at 1221-22. The plaintiff policyholders alleged that the defendant insurance companies unlawfully obtained the DOI's approval of a hurricane deductible for homeowners' insurance. *Id.* at 1220. "[T]he gravamen of plaintiff's lawsuit" was a claim that the defendants "threaten[ed] the commissioner to offer homeowners' insurance coverage in the coastal counties of Alabama unless the commissioner allowed defendants to include a percentage-based deductible," a claim which the court determined fell within the DOI's jurisdiction under the Alabama Trade Practices Law. *Id.* at 1230.

In dismissing the complaint, the court held that "[t]he Alabama Trade Practices Law establishes for the business of insurance a scheme of comprehensive rules, regulations, and penalties to regulate . . . improper trade practices" and that "the commissioner has the exclusive authority for asserting the claims which plaintiffs allege in this action regarding the lawfulness of the hurricane deductible." *Id.* at 1230-31. While *Allen* involved casualty insurance, a regulatory

area in which the DOI sets premium rates,[2] the case stands for a fundamental proposition that is dispositive here: where the gravamen of a complaint is unfair trade practices within the scope of the Alabama Trade Practices Law, primary jurisdiction is in the DOI.

## II. PLAINTIFF'S FRAUDULENT SUPPRESSION CLAIM MUST BE DISMISSED BECAUSE, AS A MATTER OF LAW, DEFENDANTS HAD NO DUTY TO DISCLOSE TO PLAINTIFF HOW HER INSURANCE PREMIUMS WERE CALCULATED.

Plaintiff's fraudulent suppression claim must be dismissed because, as a matter of law, Defendants had no duty to disclose to Plaintiff the facts allegedly suppressed, *i.e.*, the basis for calculating renewal premiums. Alabama's fraudulent suppression statute provides, in full:

> Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case.

*Ala. Code* § 6-5-120 (emphasis added).[3] An essential element of a fraudulent suppression claim is that the defendant "had a duty to disclose [an] existing material fact." *State Farm Cas. Co. v. Owen*, 729 So. 2d 834, 837 (Ala. 1998). "[T]he existence of a duty is a question of law to be determined by the trial judge." *Id.* at 839.

In *Owen*, the plaintiff, who had purchased a jewelry insurance policy from the defendant ("State Farm"), brought a fraudulent suppression claim alleging that she was misled about both the coverage provided by the policy and how premiums were calculated -- she "claimed State

---

[2] In any event, the DOI has jurisdiction to regulate deceptive trade practices with respect to insurance premiums even where the DOI does not set rates for a particular line of insurance. *See Crawford v. Am. Title Ins. Co.*, 518 F.2d 217, 220 (5th Cir. 1975) (district court opinion appended to per curiam affirmance) (dismissing federal antitrust complaint alleging price-fixing with respect to title insurance premiums on primary jurisdiction grounds; while DOI did not set rates for title insurance, court found that "the general provisions [of the Trade Practices Law] fully apply").

[3] The statute codified the tort of fraudulent suppression, which is now governed by the statute. *State Farm Cas. Co. v. Owen,* 729 So. 2d 834, 837 (Ala. 1998).

Farm had misled her into believing that, in the event of a loss, she would receive the appraisal value of the jewelry . . . [and] that State Farm had failed to inform her that her premiums would be based on the appraisal value." *Id.* at 836. Reversing a judgment for the plaintiff, the Alabama Supreme Court held, as a matter of law, that an insurance company has no duty "at the point of sale to explain fully to potential customers the insurer's internal procedures, its ratemaking process, and its business practices. *Id.* at 843. The court rejected the plaintiff's argument that an insurance company's "superior knowledge of its methods of computing premiums" imposes a duty to disclose those procedures, holding that "[s]uperior knowledge of a fact, without more, does not impose upon a party a legal duty to disclose such information. *Id.*

Plaintiff has no fraudulent suppression claim because under *Owen*, Defendants had no duty to disclose the information that is alleged to have been suppressed -- *i.e.*, the particular methodology by which the insurance premiums would be calculated.[4] Therefore, Plaintiff's fraudulent suppression claim should be dismissed.

## III. BOTH THE FRAUD AND FRAUDULENT SUPPRESSION CLAIMS ARE BARRED BY ALABAMA'S TWO-YEAR (2) LIMITATIONS PERIOD.

The statute of limitations for fraud and fraudulent suppression in Alabama is two (2) years. *Ala. Code* §§ 6-2-38(l), 6-2-3; *Brown v. Commonwealth Life Ins. Co.*, 22 F. Supp. 2d 1325, 1328 (M.D. Ala. 1998). In this case, the Plaintiff applied for the subject coverage in or about 1996 (nearly eight (8) years prior to filing of this lawsuit). (*See* Complaint, ¶ 5). Thus, under documents central to Plaintiff's claim that are appropriately considered under Rule 12(b)(6), Plaintiff's claims are time-barred.

---

[4] Plaintiff has also failed to allege that she inquired into Defendants' ratemaking procedures -- an omission by Plaintiff that is fatal to her claims. *See Owen*, 729 So. 2d at 843 ("There was no evidence that Owen inquired into State Farm's ratemaking procedures or its replacement services. . . . In the absence of an inquiry, we cannot say that she had no opportunity to learn about how her premium would be computed.").

## IV. LIKEWISE, PLAINTIFF'S CLAIMS FOR NEGLIGENT, RECKLESS AND WANTON CONDUCT ARE ALSO TIME-BARRED.

Similar to the fraud claims, all claims for negligence in Alabama are governed by the two-year (2) statute of limitations. *Ala. Code* § 6-2-38(l); *Thompson v. Vaughn*, 592 So. 2d 585 (Ala. 1992) ("...all of the negligence and fraud claims ... are barred by the two-year statute of limitations applicable to those claims." *Id.* at 587 (citation omitted)).

In this case, the Plaintiff applied for the subject coverage in or about 1996 (nearly eight (8) years prior to filing of this lawsuit). (*See* Complaint, ¶ 5). Plaintiff filed this lawsuit on January 10, 2005. Based on Plaintiff's pleading in the Complaint, any claim for negligent conduct allegedly occurring in the sale of said policy is time-barred. Simply put, on the face of Plaintiff's Complaint, her claims for negligent, reckless and wanton conduct are barred by the two-year (2) statute of limitations applicable in Alabama.

## V. PLAINTIFF'S BREACH OF CONTRACT CLAIM MUST BE DISMISSED BECAUSE PLAINTIFF'S ALLEGATION FAILS TO SET FORTH WHAT PROVISIONS OF THE CONTRACT WERE BREACHED BY DEFENDANTS AND HOW DEFENDANTS FAILED TO PERFORM UNDER THE CONTRACT.

In order to state a viable cause of action for breach of contract, a plaintiff must show "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Congress Life Insurance Co. v. Barstow*, 799 So. 2d 931, 937 (Ala. 2001); *see also, Ex parte Alfa Mut. Insurance Co.*, 799 So. 2d 957, 962 (Ala. 2001). Indeed, in the case *sub judice*, Plaintiff has failed to assert any of the foregoing elements for a breach of contract claim. Clearly, such a blunt pleading is deficient and not within the meaning of notice pleading as set forth in the *Alabama Rules of Civil Procedure*.

The general rule is that a contract should be pled "*haec verba* or according to its legal effect, and the agreement, or so much thereof as is material to the breach, and the breach itself, must be set forth with certainty." *State Farm Mutual Auto. Insurance Co. v. McClendon*, 114 So. 2d 153, (Ala. 1959). Here, in the Complaint, Plaintiff failed to plead *any* material provisions of the contract itself, let alone any of the facts material to the alleged breach.

In *Port City Construction Co. v. Henderson*, 266 So. 2d 896 (Ala. 1972) the Alabama Supreme Court held that a complaint that failed to show all of the material elements of the contract did not state a cause of action for breach of contract. The court found:

> Sufficient pleading of a contract must precede proof. ... Though a contract may be pleaded by stating its substance and legal effect, or in haec verba, all material elements should be stated with certainty to a common intent. .... 
>
> Without setting out here the allegations of count one, we consider it sufficient to say that none of the material elements of the contract are set out. There is neither time, quantity or consideration alleged. It is totally insufficient to inform as to the material elements of the alleged contract nor provide a measure of damages for the alleged breach.
>
> Count two of the complaint, though containing in haec verba the writing signed by the parties, such writing, though sufficient as a memorandum of the contract as against the statute of frauds, clearly is not all of the contract and is insufficient of itself to show all of the material elements of the contract sought to be enforced.

*Id.* at 645 (citation omitted) (emphasis added). Indeed, in the present case, Plaintiff's allegations fail to show any of the material elements of the contract for group health insurance coverage sought to be enforced. Furthermore, Plaintiff fails to show how those alleged contract provisions were breached or how Plaintiff was damaged thereby. Based on Plaintiff's Complaint and the contract central to her claims alleged therein, because she failed to plead how Defendants breached the contract, Plaintiff's claim for breach of contract fails to state a claim upon which relief can be granted and is therefore due to be dismissed.

## VI. PLAINTIFF'S CONTRACT CLAIM MUST BE DISMISSED BECAUSE PLAINTIFF'S ALLEGATION OF A VAGUE AND INDEFINITE AGREEMENT TO ENTER INTO A FUTURE CONTRACT IS UNENFORCEABLE UNDER ALABAMA LAW.

What Plaintiff's contract claim alleges is an unenforceable, indefinite agreement to enter into a future contract. It is well-established that "agreements to later agree are not enforceable" and that "to be enforceable, a contract to enter into a future contract must be definite and certain in all its terms and conditions . . .." *Muscle Shoals Aviation, Inc. v. Muscle Shoals Airport Auth.*, 508 So. 2d 225, 226-28 (Ala. 1987) (citation omitted).

Plaintiff alleges none of the terms of the purported contract with Defendants to purchase "group" health insurance in which premium payments would be based upon the claims of the "group" - for instance, the Complaint does not allege:

-how future premiums would be calculated;

-what coverage would be provided by the policy, including exclusions and limitations;

-how claims would be made under the policy;

-what the term of the policy would be, and under what circumstances it could be renewed; and

-when Defendants would sell the policy to Plaintiff.

Such an "agreement to agree" is unenforceable as a matter of law because it is not "definite and certain in all its terms and conditions . . ." *Muscle Shoals*, 508 So. 2d at 171. In *Muscle Shoals*, the court reversed a judgment for the plaintiff, holding that a renewal provision in a lease providing for "the rate of rental and other terms and conditions to be negotiated" was unenforceable "[s]ince there was no specificity as to the term and conditions of the lease to be made," including "the amount of rent to be paid [and] such conditions, covenants, and limitations as are acceptable to both parties." *Id.* at 225-28. As the Alabama Supreme Court expressed the rule in *Muscle Shoals*:

> [T]o be enforceable, a contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as a result of future negotiations. Where a preliminary contract leaves certain terms to be agreed upon for the purpose of a final contract, there can be no implication of what the parties will agree upon.

Id. at 227. (*quoting Parker Chiropractic Research Found. v. Fairmont Dallas Hotel Co.*, 500 S.W. 2d 196 (Tex. Civ. App. 1973)). Similarly, *Alexander v. Petroleum Installation Co.*, 693 So. 2d 30 (Ala. 1996), the court, in affirming summary judgment for the defendant, held that an oral contract for the sale of real properly was "an agreement to make a future agreement, which is not an enforceable contract" given that "[t]he oral agreement . . . has several indefinite terms, including the date of the future real estate states contract, as well as the specific contingencies that most occur before the parties are required to execute the future contract." *Id.* at 31-32.[5]

Here, the preliminary, pre-purchase agreement alleged by Plaintiff is not alleged to be in writing, and the "definite terms" are not pled. As alleged, the contract is unenforceable as a matter of law; the claim, therefore, must be dismissed.

## VII. UNDER PREVAILING LAW, AMS AND UWLIC, AS SISTER CORPORATIONS, CANNOT COMBINE TO FORM A CONSPIRACY.

Plaintiff's conspiracy claim against AMS and UWLIC, to the extent it alleges an unlawful combination of those entities, must fail as a matter of law because sister corporations cannot conspire. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 778 (1984); *Advanced Health-Serv. v. Radford Com. Hosp.*, 910 F.2d 139, 146 (4th Cir. 1990).

[5] *See also Schacklette v. Dowdy*, 816 So. 2d 487 (Ala. Civ. App. 2001) (reversing judgment for plaintiff, holding that a written preliminary contract for the sale of real estate was unenforceable as a matter of law); *Howard v. Ryder Truck Rental One-Way, Inc.*, 624 So. 2d 169, 170-71 (Ala. 1993) (per curiam) (affirming summary judgment for defendant on grounds that preliminary settlement stipulation in which parties agreed to enter into another stipulation in the future was unenforceable because "it appears that the definite terms of the stipulation of discontinuance were to be agreed on at some later date").

In *Copperweld*, the United States Supreme Court confronted the issue of whether an actionable conspiracy could exist between a corporation and its wholly owned subsidiary for purposes of the Sherman Antitrust Act. The Court held that such a conspiracy could not exist because a parent and its wholly owned subsidiary are so closely connected that they have "a complete unity of interest" and must be viewed as a single enterprise for purposes of the Sherman Act. *Copperweld*, 467 U.S. at 771. The Court stated that:

> . . . the coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of Section 1 of the Sherman Act. A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate, their general corporate actions are guided or determined not by two separate corporate consciousness, but one. They are not unlike a multiple team of horses drawing under the control of a single driver. With or without a formal "agreement," the subsidiary acts for the benefit of the parent, its sole shareholder. . . .
>
> Indeed, the very notion of an "agreement" in Sherman Act terms between a parent and a wholly owned subsidiary lacks meaning. A § 1 agreement may be found when "the conspirators had a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." But in reality a parent and a wholly owned subsidiary always have a "unity of purpose or a common design." They share a common purpose whether or not the parent keeps a tight rein over the subsidiary; the parent may assert full control at any moment if the subsidiary fails to act in the parent's best interests.

*Copperweld*, 467 U.S. at 771 (citations omitted).

The *Copperweld* holding and rationale applies to conspiracies alleged between wholly owned "sister" corporations as well as to conspiracies alleged between a parent corporation and its wholly owned subsidiary. *Advanced Health-Serv. v. Radford Com. Hosp.*, 910 F.2d 139, 146 (4th Cir. 1990). In *Radford*, the plaintiff brought an antitrust lawsuit against two sister corporations wholly owned by the same corporate parent for allegedly conspiring together under §§ 1 and 2 of the Sherman Act. On appeal, the Fourth Circuit affirmed the dismissal of the plaintiff's antitrust claims holding that under the Supreme Court's reasoning in *Copperweld* "two subsidiaries wholly owned by the same parent corporation are legally incapable of conspiring

with one another for purposes of § 1 of the Sherman act." *Id.* at 146. The Fourth Circuit pointed out that while the *Copperweld* decision dealt with the parent/subsidiary corporate relationship, the Supreme Court "noted that an agreement between two subdivisions of a single corporation was not likely to be anti-competitive and that antitrust liability should not depend on whether a corporate subunit is organized as an unincorporated division or a wholly owned subsidiary." Id.

In reaching its decision in *Radford*, the Fourth Circuit relied on precedent established by both the Fifth and Sixth Circuits. These circuits have both held that the U.S. Supreme Court's decision in *Copperweld* precludes an antitrust conspiracy between two or more sister corporations. *See Directory Sales Management Corp. v. Ohio Bell Tel. Co.*, 833 F.2d 606, 611 (6th Cir. 1987) ("*Copperweld* precludes a finding that two wholly-owned sibling corporations can combine for purposes of section 1"); *Hood v. Tenneco Texas Life Ins. Co.*, 739 F.2d 1012, 1015 (5th Cir. 1984) ("*Copperweld* teaches us that because [two subsidiaries] share a common purpose with [their parent] they cannot conspire with their parent in violation of the Sherman Act. By the same token, neither can they conspire with one another."); *Century Oil Tool v. Production Specialties*, 737 F.2d 1316, 1317 (5th Cir. 1984) (finding no relevant difference under the *Copperweld* doctrine between a corporation wholly owned by another corporation and two corporations wholly owned by a third corporation).[6]

---

[6] *See also Cohen v. Primerica Corp.*, 709 F. Supp. 63, 65 (E.D.N.Y. 1989) (reasoning that "[i]f a wholly owned subsidiary is not independent of its parent corporation [under *Copperweld*], then wholly owned subsidiaries of one parent corporation are not independent of each other" and cannot conspire with each other.); *Newport Components v. NEC Home Elec.*, 671 F. Supp. 1525, 1544 (C.D.Cal. 1987) (manufacturer and two wholly owned subsidiaries must be viewed as a "single entity" with "complete unity of interest."); *H.R.M. v. Tele-Communications*, 653 F. Supp. 645, 647 (D.Colo. 1987) (sister subsidiaries could not conspire with one another in violation of § 1 of the Sherman Act); *Gucci v. Gucci Shops*, 651 F. Supp. 194, 197 (S.D.N.Y. 1986) (the "reasoning employed by the Supreme Court in *Copperweld* applies with equal force to sister corporations as well as to commonly-owned corporations, as has been recognized by both courts and commentators.").

Numerous courts have held that the *Copperweld* doctrine encompasses claims of civil conspiracy outside the antitrust context of the Sherman Act. *See Nebraska Sec. Bank v. Dain Bosworth*, 838 F. Supp. 1362, 1368-71 (D.Neb. 1993) (holding that parent and subsidiary cannot together form a RICO "enterprise," because of *Copperweld*'s reasoning); *Satellite Financial Planning v. First Nat. Bank*, 633 F. Supp. 386, 405 n. 23 (D.Del. 1986) (wholly-owned subsidiaries and nearly wholly owned subsidiaries "can conspire in violation of RICO no more than they could for antitrust purposes under *Copperweld*"); *SI Handling Systems v. Heisley*, 658 F. Supp. 362, 370 (E.D. Pa. 1986) (*Copperweld* rationale is authority for concluding that a parent corporation owns the trade secrets acquired by its subsidiary); *Laxalt v. McClatchy*, 622 F. Supp. 737, 745 (D. Nev. 1985) (wholly-owned subsidiaries have no separate legal existence for civil conspiracy claims); *First Nat. Bank v. Lustig*, 809 F. Supp. 444, 448 (E.D. La. 1992) ("As a matter of law, a subsidiary and a parent . . . are incapable of conspiring with each other.").

A clear example of the *Copperweld* doctrine in a general civil conspiracy claim came in the decision of *Pizza Management v. Pizza Hut*, 737 F. Supp. 1154 (D. Kan. 1990). There, a pizza franchisee sued the franchisor and its parent corporation alleging tortious interference with contract, bad faith breach of contract, and civil conspiracy. The court dismissed the civil conspiracy claim on the basis of *Copperweld* and held that, in almost all circumstances, the tort of civil conspiracy cannot exist between a corporation and its wholly-owned subsidiary. The court stated:

> The rationale in *Copperweld* is compelling enough to justify its extension to the tort of conspiracy as pleaded in this case. A conspiracy, by itself, is not actionable; there must be harm or injuries resulting from it and from conduct independently actionable. . . . By the very nature of their relationship, the parent corporation and its wholly owned subsidiary have shared goals, particularly economic ones, since "the subsidiary acts for the benefit of the parent, its sole shareholder." If a civil conspiracy was actionable under these circumstances, the

> stricter burdens governing the alter ego doctrine and the policy values reflected in those burdens would be readily circumvented.

*Pizza Management*, 737 F. Supp. at 1166 (citations omitted).

Even before the Supreme Court's decision in *Copperweld*, a number of federal courts had determined that intra-corporate conspiracies were not actionable. *See Bryant Heating & Air Conditioning Co. v. Carrier Corp.*, 597 F. Supp. 1045, 1054 (S.D. Fla. 1984) (a corporation and its wholly-owned subsidiary "cannot constitute the requisite combination of 'separate economic groups or forces' necessary to establish the Florida tort of conspiracy"); *Thomas v. Rohner-Gehrig & Co.*, 582 F. Supp. 669, 673 (N.D. Ill. 1984) (observing that conspiracy is not possible where defendants are two interrelated corporations); *Bunch v. Artec International Corp.*, 559 F. Supp. 961, 970 (S.D.N.Y. 1983) (noting that neither Pennsylvania nor Oregon law recognizes a conspiracy between a corporation and its subsidiaries).

Under the United States Supreme Court's rationale in *Copperweld* and its progeny, as a matter of law, the conspiracy claims in the present matter are likewise without merit to the extent they allege a conspiracy between AMS and UWLIC. AMS and UWLIC are interrelated sister corporations, sharing the same parent corporation, American Medical Security Group, Inc. The companies share a unity of purpose within the health insurance industry and are thus legally incapable of conspiring with one another. Accordingly, as established by the above authorities, Plaintiff's conspiracy claim must be dismissed to the extent it alleges a conspiracy between AMS and UWLIC.

## CONCLUSION

For all the foregoing reasons, Defendants United Wisconsin Life Insurance Company and American Medical Security, Inc.'s Motion to Dismiss Plaintiff's Complaint should be granted, and all claims should be dismissed with prejudice in their entirety.

Respectfully submitted,

James E. Fleenor, Jr. (FLE-029)
Harlan F. Winn, III (WIN-023)
Michael J. Clemmer (CLE-029)
Attorneys for Defendants,
AMERICAN MEDICAL SECURITY, INC., AND
UNITED WISCONSIN LIFE INSURANCE CO.

**OF COUNSEL:**

BATTLE FLEENOR GREEN
WINN & CLEMMER LLP
The Financial Center, Suite 1150
505 North 20th Street
Birmingham, Alabama 35203
205/397-8160
205/397-8179 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on the following counsel of record by placing same in the United States mail, postage prepaid, addressed as follows:

Ted L. Mann, Esq.
Mann, Cowan & Potter, P.C.
Suite 601
2000-B SouthBridge Parkway
Birmingham, Alabama 35209

on this the 11 day of February, 2005.

OF COUNSEL

STATE OF ALABAMA
DEPARTMENT OF INSURANCE
201 MONROE STREET, SUITE 1700
POST OFFICE BOX 303351
MONTGOMERY, ALABAMA 36130-3351
Telephone: (334) 269-3550
Facsimile: (334) 241-4192

ON SIEGELMAN
GOVERNOR

D. DAVID PARSONS
ACTING COMMISSIONER

CHIEF EXAMINER
RICHARD L. FORD
STATE FIRE MARSHAL
JOHN S. ROBISON
GENERAL COUNSEL
MICHAEL A. BOWNES

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| AMERICAN MEDICAL SECURITY, INC. | ) | CASE NO. C-99- D |
| and UNITED WISCONSIN LIFE | ) | |
| INSURANCE COMPANY | ) | |

## CONSENT ORDER

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. United Wisconsin Life Insurance Company ("UWLIC") is a duly licensed and authorized insurer who does business in the State of Alabama and whose principal place of business is Green Bay, Wisconsin. American Medical Security, Inc. ("AMS") is a Delaware Corporation and a third party administrator transacting business in the State of Alabama on behalf of United Wisconsin Life Insurance Company.

2. AMS administers trusts which are domiciled in the State of Alabama. Policies are issued to these trusts by UWLIC. UWLIC issues certificates of health insurance under health insurance policies issued to the trustees of the "Prescription for Good Health Trust" and the "American Medical Security Trust" to eligible members in the State of Alabama.

3. The Alabama Department of Insurance (hereinafter referred to as the Department) has conducted an investigation of the insurance related activities of UWLIC and AMS.

4. It is the Department's position that certain compliance practices and processes of AMS and UWLIC were not being conducted in accordance with the Alabama Insurance Code and regulations.

5. While AMS and UWLIC do not agree with the Department's position and in fact deny that they have violated any laws or regulations of the Department, they do agree to conform their rating practices to the requirements of the Departmental Bulletin

EXHIBIT
1

dated September 9, 1999. Further, the companies agree to reimburse the Department for its administrative costs in the amount of $10,000.

6. The Department's current investigation into the business practices of UWLIC and AMS is therefore now concluded and this Consent Order constitutes the full and final resolution as to all matters reviewed in such current investigation.

7. The Department acknowledges that the companies have made progress in improving its compliance practices and processes.

8. The companies hereby acknowledge that they are knowingly and voluntarily waiving all rights to an administrative hearing or to any challenge or to contest this Consent Order, in any forum now available to it, including but not limited to, the right to any administrative proceeding, circuit or federal court action, or any appeal of the Commissioner's Order.

DONE and ORDERED this 1 day of Oct, 1999.

D. DAVID PARSONS
ACTING COMMISSIONER OF INSURANCE

STIPULATED and APPROVED this 1 day of October, 1999.

AMERICAN MEDICAL SECURITY, INC.

UNITED WISCONSIN LIFE INSURANCE COMPANY

RECEIVED
MAY 0 2 2001
HARE & CLEMENT

# IN THE CIRCUIT COURT OF BULLOCK COUNTY, ALABAMA

| | | |
|---|---|---|
| SHARON JACKSON, <br><br> Plaintiff, <br><br> v. <br><br> UNITED WISCONSIN LIFE INSURANCE COMPANY; AMERICAN MEDICAL SECURITY, INC., et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CASE NO. CV-98-103 |

## ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDMENT AND SECOND AMENDMENT TO HER COMPLAINT

This matter is before the court on defendants' Motion to Dismiss Plaintiff's Amendment and Second Amendment to her complaint filed on July 17, 2000. After reviewing the pleadings, the arguments of counsel, the applicable statutory law and relevant case law, this court is of the opinion that the defendant's request for dismissal of both amendments is due to be GRANTED.

### ALABAMA TRADE PRACTICES LAW

Alabama Code § 27-12-1 *et seq.*, referred to as the "Trade Practices Law," outlines a system created by the Alabama legislature in order to regulate the insurance industry. Within this system of regulation is a commissioner who is given specific powers and duties to effectuate the administration and regulation of all laws relating to insurance rates and rating systems of insurance companies doing business within the state of Alabama. Ala. Code § 27-13-2. Among these powers expressly conferred or reasonably implied from the code are the power to approve insurance policy forms and endorsements; to approve rates and rating systems; to conduct examinations and investigations into

EXHIBIT
2

insurance matters as deemed proper; and, to invoke any legal, equitable or special remedy necessary to enforce the law. Ala. Code § 27-2-7 (1975).

These powers conferred on the commissioner are discussed extensively by the District Court in Allen v. State Farm Fire and Cas. Co., 59 F. Supp. 2d 1217 (S.D. Ala. 1999). In Allen, insureds brought a purported class action against the defendant insurance companies alleging breach of contract. 59 F. Supp. 2d at 1220. The court dismissed the plaintiff's complaint. As grounds for said dismissal, the court found that the insurance commissioner had the "exclusive authority to regulate the purported improper trade practices" and the plaintiffs would therefore need to present their claims to the insurance commissioner for consideration prior to filing a class action lawsuit as Alabama provides no private cause of action in this instance. Allen, 59 F. Supp. 2d at 1222.

In reaching this decision, the court analyzed the commissioner's role as set out by the legislature in Title 27 of the Code of Alabama and found that the "Alabama legislature has vested the commissioner with the discretion to determine whether a particular rate or rating system...is adequate and non-discriminatory." Id. The court in Allen recognized that the regulation of insurance rates and rating systems is a purely legislative function in Alabama. 59 F. Supp. 2d at 1229. The legislature created the department of insurance and gave this department the power to regulate, therefore preventing the courts from becoming enmeshed in the rate-making process. Id. The statutory process established by the Alabama legislature is self-policing and should not be undermined by a court. Id. at 1229.

Based on the designation of an insurance commissioner with broad authority to enforce rates and rating systems, the court in Allen found that the Trade Practices Law did not provide for a private cause of action. 59 F. Supp. 2d at 1230 (citing Earlow v. Union Central Life Ins. Co., 874 F.2d 791, 785 (11th Cir. 1989)). Instead, the Trade Practices Law designates the commissioner as the enforcer by specifically outlining remedies the commissioner may use and the procedures for pursuing those remedies. Id.

Following the reasoning of the District Court's decision in Allen, this court finds that the power to regulate insurance rates and the authority to remedy insurance rate violations has been instilled in the Department of Insurance, specifically the commissioner. This was and is the intent of the legislature as evidenced by Title 27 of the Code of Alabama. Therefore, this court cannot usurp the commisioner's power nor the legislature's intent.

## THE FILED-RATE DOCTRINE

The court in Allen looked beyond the commissioner's power and the courts lack of power to further determine that the filed-rate doctrine also barred the plaintiff's lawsuit against the defendant insurors. "The filed-rate doctrine prohibits collateral challenges to rates set by a regulatory agency thereby preserving the authority of such agency over determinations of the reasonableness of rates and insuring that entities charge only those rates that the agency has approved." Allen, 59 F. Supp. 2d at 1227. "Simply stated, the doctrine holds that any 'filed rate'-- that is, one approved by the governing regulatory agency--is per se reasonable and unassailable in judicial proceedings...." Allen, 59 F. Supp. 2d at 1227 (citing Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17,18 (2nd Cir. 1994)).

The defendants assert that the plaintiff's lawsuit is barred by the filed-rate doctrine as the court in Allen similiarly determined. The plaintiff argues that the filed-rate doctrine does not apply in this instance because the breach of contract alleged by the plaintiff is with regards to the defendant's classification of members as individuals in a group policy and not with regards to rates. This argument is not well taken when viewed in concert with the plaintiff's pleadings in this matter.

In the plaintiff's Second Amended Complaint, the plaintiff specifically mentions the rate plan filed with the State of Alabama Department of Insurance and alleges that the defendant's actions were contrary to that rate plan and structure. These allegations in the Second Amended Complaint do not support the plaintiff's contention that the breach of contract occurred in the wrong classification of the plaintiff but instead supports the

defendant's argument that the suit is barred by the filed-rate doctrine. This contradiction in the plaintiff's argument is also evident in the plaintiff's Opposition Brief where she contends "[t]he thrust of the breach of contract claim is as follows: [t]he class plaintiffs contracted to purchase group insurance with group insurance premiums. United Wisconsin breached this contract by selling the class plaintiffs group insurance at individual rates." [Plaintiff's Opposition Brief, Section A., p.4]. Although this contention by the plaintiff in the Oppostion Brief makes reference to a group classification, the primary focus appears to be on rates. The plaintiff essentially states that the breach occurred when an improper rate was charged to the plaintiff. This falls under the filed-rate doctrine as outlined and discussed in Allen and is therefore within the jurisdiction of the insurance department and the commissioner.

## CONCLUSION

Under Title 27 of the Alabama Code and the filed-rate doctrine, this court does not have jurisdiction to hear this matter. The plaintiff has failed to exhaust her administrative remedies through the Alabama Department of Insurance. Therefore, this matter is **DISMISSED WITHOUT PREJUDICE** so that the plaintiff may file a complaint with the Alabama Department of Insurance. However, the plaintiff may seek court intervention after the commissioner has ruled or has refused to hold a hearing on the issue. Allen, 59 F. Supp. 2d at 1226 (citing Ala. Code § 27-2-32(a) & (b) (1975)).

DONE and ORDERED this 27th day of April, 2001.

John B. Bush, Circuit Judge