**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PAULETTE FOSTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **3:2005cv00488-MEF-VPM** |
| **AMERICAN MEDICAL SECURITY, INC., et. al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

**COME NOW** Defendants, American Medical Security, Inc. ("AMS") and United Wisconsin Life Insurance Company, Inc. ("UWLIC") (collectively "Removing Defendants"), by and through their attorneys of record, and submit this opposition to Plaintiff's Motion to Remand. In support of this opposition, Defendants show the following:

## I. INTRODUCTION

Plaintiff Paulette Foston ("Plaintiff") sued Defendants AMS, UWLIC, and AmSouth Bank ("AmSouth") in the Circuit Court of Macon County, Alabama on or about January 10, 2005. (See Not. of Removal, Exh. A) Plaintiff filed a First Amended and Restated Complaint on April 14, 2005 and a Second Amended and Restated Complaint on May 10, 2005. (See Not. of Removal, Exh. A) In each of these pleadings, Plaintiff requests "such sum of compensatory damages as the jury may assess after a fair and accurate consideration of the facts of this cause." (Id.) Thus, Plaintiff does not seek a specific amount of damages in her Complaint, as amended.

On April 18, 2005, the Removing Defendants served requests for admission on Plaintiff to attempt to determine whether the amount of damages she is seeking in this action exceeds

$75,000.00. In her April 22, 2005 responses to the Removing Defendants' requests for admission, Plaintiff clearly indicates that she seeks in excess of $75,000.00 in damages in this lawsuit. This response was the first notice that the Removing Defendants received that the amount in controversy necessary to establish diversity jurisdiction had been met.

On May 23, 2005, the Removing Defendants properly removed this matter to the United States District Court for the Middle District of Alabama, Eastern Division in accordance with 28 U.S.C. § 1441 and 28 U.S.C. § 1332. Specifically, this action was removed within thirty days of receiving Plaintiff's responses to the Removing Defendants requests for admission. The Removing Defendants also showed that the amount in controversy exceeded $75,000.00, that the parties other than AmSouth were diverse, and that AmSouth had been fraudulently joined to this lawsuit.

On June 9, 2005, Plaintiff filed a Motion to Remand as well as a Brief in Support of Motion to Remand. Plaintiff maintains that this case should be remanded because (1) the removal is untimely because it was not filed within thirty days of service on the Removing Defendants; (2) the amount in controversy requirement has not been met; and (3) AmSouth has not been fraudulently joined, thereby destroying diversity among the parties.

As shown below, the Removing Defendants removed this case in a timely manner, *i.e.*, within thirty days after receiving Plaintiff's responses to their requests for admission which constituted "other paper" under 28 U.S.C. § 1446(b). These responses to the requests for admission propounded by the Removing Defendants also establish that the amount in controversy is in excess of $75,000.00. Last, Plaintiff cannot establish a possibility that it has asserted viable claims against the only non-diverse defendant, AmSouth Bank; thus, AmSouth has been fraudulently joined and its citizenship must be disregarded for purposes of determining

whether this court has diversity jurisdiction over this matter. Consequently, the Court should deny Plaintiff's Motion to Remand.

## II. ARGUMENT

### A. The Removing Defendants Timely Filed Their Notice of Removal Within Thirty Days of Receiving Notice That Plaintiff Seeks Damages In Excess of $75,000.00.

This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), which provides in pertinent part as follows:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, **a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable**, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b) (emphasis added).

The Removing Defendants removed this matter on the basis of diversity jurisdiction within thirty days of receiving notice through Plaintiff's responses to the Removing Defendants' requests for admission related to Plaintiff's damages that Plaintiff seeks damages in excess of $75,000.00 in this matter. Plaintiff maintains that the reliance of the Removing Defendants on Plaintiff's responses to requests for admission as a trigger of the thirty day time-period in which it could remove this case is improper and that the Removing Defendants' Notice of Removal is

defective because it was not filed within 30 days of service of the Complaint on the Removing Defendants.

In a recent federal court case, the Honorable Harold Albritton, United States District Judge for the Middle District of Alabama, addressed this very issue, finding that a plaintiff's responses to requests for admission related to a plaintiff's damages constitutes an "other paper" within the meaning of 28 U.S.C. 1446. Robinson v. GE Capital Mortgage Serv., Inc., 945 F. Supp. 1516, 1518 (M.D. Ala. 1996) (denying motion to remand based on finding that 30-day time period for removal did not begin to run on date that the complaint was served on defendant, but on date that plaintiff responded to requests for admission relating to plaintiff's damages); see also Wilson v. General Motors Corporation, 888 F. 2d 779, 782 (11th Cir. 1989) (removal was timely where complaint was filed in 1984 and case was not removed until 1986 when plaintiff served responses to requests for admission which put defendants on notice that case was removable); Golden Apple Management Co., Inc. v. GEAC Computers, Inc., 990 F.Supp. 1364, 1366 (M.D. Ala. 1998) ("The court agrees with [defendant] that plaintiff's responses denying the requests for admission that the full measure of plaintiff's damages in this action is $75,000 or less and that plaintiff cannot recover more than $75,000 in compensatory and/or punitive damages is 'other paper' which advised [defendant] that the amount in controversy satisfied the minimum requirement for diversity of citizenship jurisdiction, and that the action was, therefore, removable.").

In Robinson, plaintiff sought specified damages below the jurisdictional amount for one claim and an unspecified amount of damages for the remaining four claims. Id. at 1517. Plaintiff served her complaint on defendants on March 5, 1996. Id. On April 15, 1996, defendants served requests for admission on the plaintiff requesting that the plaintiff admit that

she was seeking less than $50,000.00 in the lawsuit.[1] Id. Plaintiff denied these requests for admission on April 24, 1996. Id. On April 29, 1996, nearly sixty days after defendants were served with the complaint but within thirty days of receiving Plaintiff's response to this request for admission, defendants filed their notice of removal. Id. Plaintiff moved to remand, arguing that the removal was untimely because it was not removed within 30 days of service of the complaint. Id.

In Robinson, the court denied the plaintiff's motion to remand, noting that where the plaintiff makes an unspecified demand for damages in her complaint such as in that case "the problem presented . . . is one of the Plaintiff's making, not of the Defendants. The Plaintiff easily could have claimed a specific amount, or at least could have claimed an amount 'in excess of $50,000,' so that it would be clear that the case was removable if the diverse Defendants chose to remove it." Id. at 1518. The court concluded that "[t]his court will not allow a trap to be set by a plaintiff filing a complaint in state court claiming an unspecified amount of damages and then objecting to a removal as being untimely when a defendant removes within 30 days after ascertaining that the claim actually exceeds the jurisdictional amount." Id. at 1518.

In the present case, Plaintiff's counsel contends that the Removing Defendants had knowledge that the amount in controversy exceeded $75,000.00 because they previously removed, within thirty days of being served with the complaint, several other similar cases filed by plaintiff's counsel on behalf of different plaintiffs. Specifically, plaintiff's counsel references the cases of Curtis B. Davis v. American Medical Security, Inc, et al. and Hicks v. American Medical Security, Inc. et al. It is true that in each of these cases, the plaintiff sought an unspecified amount of damages and the Removing Defendants argued that the amount in

---

[1] At the time the Robinson case was decided, the amount in controversy necessary to establish diversity jurisdiction was $50,000.00.

controversy had been met; however, the court did not address the amount in controversy issue in either opinion. More pertinent to this issue are the orders entered in two other similar cases, Robert T. Bennett, et al. v. American Medical Security, et al., Civil Action No. CV 02-D-120-N, in the United States District Court for the Middle District of Alabama, Northern Division (Exh. 1, attached hereto) and Vivian Gadson v. United Wisconsin Life Ins. Co., et al., in the United States District Court for the Middle District of Alabama, Northern Division, Civil Action No. CV 02-T-793-N (Exh. 2 attached hereto). Both Gadson and Bennett were remanded to the state court from which they were removed on the basis that the Removing Defendants did not meet their burden of showing that the amount in controversy had been met by merely alleging that similar cases had resulted in judgments greater than the jurisdictional amount.

Thus, contrary to the arguments of Plaintiff's counsel, the Davis and Hicks actions do not establish that the Removing Defendants should have known that the amount in controversy had been met in the instant matter at the time the Removing Defendants were served with the Complaint. Moreover, the orders in Gadson and Bennett support the argument of the Removing Defendants that it would be prudent to gather additional evidence on the amount in controversy before removing a case based on diversity jurisdiction where the plaintiff seeks an unspecified amount of damages.

Last, Plaintiff's counsel argues that the Removing Defendants should have been aware of their argument that AmSouth had been fraudulently joined at the time they were served with the complaint because the Removing Defendants had made this argument in other similar cases as well. Thus, Plaintiff's counsel contends that these arguments should have been made in a notice of removal within thirty days of service of the complaint on the Removing Defendants. Again, it is true that such an argument has been made in other cases by the Removing Defendants;

however, Plaintiff's counsel ignores that the Removing Defendants have the burden of establishing not only that AmSouth has been fraudulently joined in this case, but also that the amount in controversy has been met before the court may exercise diversity jurisdiction over this case. As indicated above, the Removing Defendants first became aware that the amount in controversy had been met when plaintiff responded to the Removing Defendants' requests for admission regarding Plaintiff's alleged damages. Thus, the case could not have been properly removed prior to this time.

Based on the foregoing, this case was removed in a timely fashion.

**B. <u>The Court Has Diversity Jurisdiction Over This Matter.</u>**

This action is removable under 28 U.S.C. § 1441(a) and (b) because the United States District Court has original jurisdiction of this case under 28 U.S.C. § 1332(a), as amended, which provides in pertinent part as follows:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between -
>
> (1) citizens of different States . . . .

28 U.S.C. § 1332(a). Here, the amount in controversy exceeds $75,000.00. There is only one named plaintiff in this action. Plaintiff is a resident citizen of the State of Alabama. (Second Amended Complaint, ¶ 1) There are three (3) named Defendants in this action. Removing Defendants AMS and UWLIC were formerly separate foreign corporations doing business in Alabama. (<u>Id.</u> ¶ 2) AMS and UWLIC have now merged into one new entity, American Medical Security Life Insurance Company, which is also a foreign corporation doing business in Alabama. Resident Defendant AmSouth, which has been fraudulently joined, is an Alabama corporation doing business in the State of Alabama. (<u>Id.</u> ¶ 3)

**1. Defendants Have Shown By a Preponderance of the Evidence That The Amount in Controversy to Establish Diversity Jurisdiction Has Been Met.**

Plaintiff's complaint, as amended, alleges claims for breach of contract, fraud, and breach of fiduciary duty. (See Second Amended Complaint) Plaintiff seeks an unspecified amount of compensatory damages, including mental anguish, as well as punitive damages. (See Second Amended Complaint)

The Middle District of Alabama eloquently addressed this very principal involved in the present set of facts, as set out below:

> A plaintiff should not be allowed to deprive a defendant of his right to remove through artful pleading practices. Apparently, the United States Supreme Court would agree:
>
> > If the plaintiff could, no matter how *bona fide* his original claim in state court, reduce the amount of his demand to defeat federal jurisdiction, the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice. The claim, whether well or ill founded in fact, fixes the right of the defendant to remove, and the plaintiff ought not to be able to defeat that right and bring the cause of action back to the state court at his election. If he does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove. Saint Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 294, 58 S.Ct. 586, 593, 82 L.Ed. 845 (1938) [emphasis original].
>
> This same reasoning should apply to the situation in the case *sub judice*, where the Plaintiff completely failed to demand a specific monetary figure, apparently for the purpose of avoiding federal jurisdiction. **The Plaintiff should not be allowed to rob [the defendant] of its right to remove by demanding damages as may be 'fairly ascertained by the jury.'[2] Permitting such practice allows the Plaintiff to 'have his cake and eat it too.' In other words, the Plaintiff effectively prevents federal jurisdiction by failing to demand a specific**

---

[2] In the present case, Plaintiff, in a similar fashion, demanded an unspecified amount of damages. (See Complaint, as amended)

> **monetary figure, while making it possible for the jury to return a verdict well in excess of [the jurisdictional amount]. Such an approach is simply unfair and will not be permitted by this Court.**

Steele v. Underwriters Adjusting Co., 649 F. Supp. 1414, 1416 (M.D. Ala. 1986) (emphasis added).

Because Plaintiff's alleged damages are not for a specific amount, the Removing Defendants must show by a "preponderance of the evidence that the amount in controversy more likely than not exceeds the [$75,000.00] jurisdictional requirement." Tapscott v. MS Dealer Serv. Corp., 77 F. 3d 1353, 1357 (11th Cir. 1996); Lowe's Ok'd Used Cars, Inc. v. Acceptance Insurance Co., 995 F. Supp. 1388, 1389 (M.D. Ala. 1998). The Middle District defined that standard as "such evidence that, when considered with the opposing evidence, has more convincing force, and demonstrates that what is sought to be proved 'is more likely true than not true.'" Prickett v. United States, 111 F. Supp. 2d 1191, 1192 (M.D. Ala. 2000) (citing Pattern Jury Instructions, Basic Instruction No. 6.1, U.S. Eleventh Circuit District Judge Association (Civil Cases) (1999)).[3] The rationale for the lesser standard was explained as follows: "This lower burden of proof 'is warranted because there is simply no estimate of damages to which a court may defer.'" Lowe's Ok'd Used Cars, 995 F. Supp. at 1389 (citation omitted).

**(1) Compensatory Damage Awards in Similar Lawsuits Have Resulted in Substantial Recoveries Well Exceeding $75,000.00.**

As this Court is aware, compensatory damages in tort actions in Alabama have often resulted in substantial recoveries for mental anguish, emotional distress, and other similar harms, well exceeding the $75,000.00 required for diversity jurisdiction. Recent jury verdicts in

---

[3] See also, Alabama Power Co. v. Turner, 575 So. 2d 551 (Ala. 1991) ("'Preponderance of the evidence' as a standard of proof in a civil case means 'evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not.'" Id. at 561) (citing Black's Law Dictionary p. 1182 (6th ed. 1990)) (Houston, J., dissent).

Alabama reflect the potential magnitude of compensatory damage claims for mental and emotional distress arising from various allegations. Verdicts well in excess of $75,000.00 have been rendered against corporate defendants, particularly out-of-state corporations, in such actions. See, e.g., Life Ins. Co. of Ga. v. Parker, 726 So. 2d 619 (Ala. 1998) (Alabama Supreme Court determined compensatory award of $4,276.00 supported punitive damages of $150,000.00 in insurance fraud action where plaintiffs claimed they had fraudulent induced to replace their existing "paid up" policies for "graded-death-benefit" policies, i.e., policies that would not pay the full face amount until premiums were paid for three years.); Life Ins. Co. of Georgia v. Johnson, 701 So. 2d 524 (Ala. 1997) (Alabama Supreme Court determined compensatory award of $250,000.00 supported punitive award of $3,000,000.00 when plaintiff showed she had been sold worthless Medicare supplement insurance.); American Pioneer Life Ins. Co. v. Williamson, 704 So. 2d 1361 (Ala. 1997) (Alabama Supreme Court affirmed compensatory damage award of $250,000.00 and awarded punitive $750,000.00 in action where a former insurance agent established she had been wrongfully forced to surrender substantial commissions.); Gallant v. Prudential Ins. Co. of Am., CV-93-50, 1994 WL 180709 (LRP JURY) (awarding $430,000.00 in compensatory damages for alleged insurance fraud); Talent Tree Personnel Serv., Inc. v. Fleenor, 703 So. 2d 917, 922-23 (Ala. 1997) (awarding $300,000.00 in compensatory damages for alleged fraudulent misrepresentation); First Commercial Bank v. Spivey, 694 So. 2d 1316, 1326 (Ala. 1997) (awarding $450,000.00 in compensatory damages for emotional distress arising from the defendant's fraudulent conduct).

**(2) Punitive Damage Awards in Similar Lawsuits Have Resulted in Substantial Recoveries Well Exceeding $75,000.00.**

Punitive damages, if available, must also be considered when determining the jurisdictional amount in controversy in diversity cases. Bolling v. Union Nat'l Life Insurance

Co., 900 F. Supp. 400, 405 n.6 (M.D. Ala. 1995) (citing Holley Equipment Co. v. Credit Alliance Corp., 821 F.2d 1531, 1535 (11th Cir. 1987) ("[w]hen determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered, . . . unless it is apparent to a legal certainty that such cannot be recovered.")); Swafford v. Transit Cas. Co., 486 F. Supp. 175, 177 (N.D. Ga. 1980) ("It is clear that in determining the jurisdictional amount in controversy, punitive damages are to be counted.") (citing Bell v. Preferred Life Assurance Soc., 320 U.S. 238 (1943)). Indeed, a plaintiff's demand for punitive damages may be deemed to satisfy the jurisdictional minimum when it is "possible" for a jury to award that amount in punitive damages under the relevant state's laws. Ryan v. State Farm Mutual Auto. Insurance Co., 934 F.2d 276, 277 (11th Cir. 1991).

In several recent fraud cases in Alabama, foreign corporations, such as the ones involved in this case, have suffered punitive damages awards well in excess of $75,000.00. See, e.g., Johnson v. Mercury Fin. Co., CV-93-52, in the Circuit Court of Barbour County, Alabama, Clayton Division (Plaintiff, buyer of used cars, alleged that defendant fraudulently failed to disclose a $1,000.00 discount for which defendant purchased the non-recourse note. Jury awarded $90,000.00 in compensatory damages, and $50,000,000.00 in punitive damages. The award of punitive damages was remitted to $2,000,000.00); Key v. Prudential Ins. Co., et al., CV-93-479, in the Circuit Court of Marshall County, Alabama (August 28, 1995) (The plaintiff alleged that the insurance agent misrepresented that no additional premium payments would be required. Jury awarded $25,000,000.00 in punitive damages.); Parham v. Foremost Ins. Co., CV-94-44, in the Circuit Court of Bullock County, Alabama (June 7, 1995) (Plaintiffs, purchasers of a mobile home, alleged that the seller/agent misrepresented material facts about homeowners insurance purchased by plaintiffs. Jury found defendant insurance company liable

and awarded $6,000.00 in compensatory damages, and $7,500,000.00 in punitive damages); Gallant, CV-93-50, 1994 WL 180709 (LRP JURY) (awarding $33,000,000.00 in punitive damages); Ford Motor Co. v. Sperau, 708 So. 2d 111, 124 (Ala. 1997) (awarding $1,792,000.00 in punitive damages).

**(3) Plaintiff's Responses to Requests for Admission Regarding the Damages Sought By Plaintiff Establish That Plaintiff is Seeking in Excess of $75,000.00.**

Last, "great weight" is given to plaintiff's assessment of the value of plaintiff's case when determining diversity and removal jurisdiction. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1094 (11th Cir. 1994); see also 32A Am. JUR. 2D FEDERAL COURTS § 1208 ("As a general principle, the amount claimed by the plaintiff controls in determining whether jurisdiction lies in the federal courts"). Further, the Court in Burns explained that "[e]very lawyer is an officer of the court. And, in addition to his duty of diligently researching his client's case, he always has a duty of candor to the tribunal. So, plaintiff's claim, when it is specific and in a pleading signed by a lawyer, deserves deference and a presumption of truth." Burns, 31 F.3d at 1095. When a plaintiff denies that he is seeking less than the jurisdictional amount in response to a request for admission, a court may rely on the denial as proof that the plaintiff is seeking more than the jurisdictional amount. See, e.g., Robinson v. GE Capital Mortgage Serv., Inc., 945 F. Supp. 1516, 1518 (M.D. Ala. 1996) (court exercised diversity jurisdiction after it was established that removal was timely).

Here, the Removing Defendants propounded requests for admission to Plaintiff on April 18, 2005, related to the damages she seeks in this action to which Plaintiff responded on April 22, 2005. (See Removing Defendants First Requests for Admission to Plaintiff, Exh. B to Not. of Removal; Plaintiff's Responses to First Requests for Admission, Exh. B to Not. of Removal).

Specifically, the following responses were made by plaintiff to the following requests for admission from the Removing Defendants:

1. Admit that you are not seeking compensatory and/or punitive damages or any combination thereof in excess of $75,000.00 in this case.

**RESPONSE**: Denied.

2. Admit that you will not demand compensatory and/or punitive damages or any combination thereof in excess of $75,000.00 in this case.

**RESPONSE**: Denied.

3. Admit that you will not request compensatory and/or punitive damages or any combination thereof in excess of $75,000.00 in this case.

**RESPONSE**: Denied.

4. Admit that you will not accept compensatory and/or punitive damages or any combination thereof in excess of $75,000.00 in this case.

**RESPONSE**: Denied.

5. Admit that you have not previously sought compensatory and/or punitive damages or any combination thereof in excess of $75,000.00 in this case.

**RESPONSE**: Denied.

(Id.). The court and the Removing Defendants are entitled to rely on the statements made in the request for admission responses, which were signed by Plaintiff's counsel. Based on the case law cited above, combined with the evidence presented by the Removing Defendants, Removing Defendants have shown that it is more probable than not that the amount in controversy in this case exceeds the jurisdictional amount.

**2. All Real Parties To the Controversy Are Diverse.**

The second requirement necessary to establish diversity jurisdiction is that the real parties to the controversy are citizens of different States. The sole Plaintiff in this case is a resident citizen of the State of Alabama. (Second Amended Complaint). Of the three (3) named Defendants in this action, Removing Defendants AMS and UWLIC were formerly separate foreign corporations doing business in Alabama. (Id. ¶ 2). AMS and UWLIC have now merged into one new entity, American Medical Security Life Insurance Company, which is also a foreign corporation doing business in Alabama. The remaining defendant, AmSouth ("Resident Defendant" or "AmSouth"), which has been fraudulently joined, is an Alabama corporation doing business in the State of Alabama. (Id. ¶ 3).

**(1) The Only Non-Diverse Defendant, AmSouth, Has Been Fraudulently Joined.**

Plaintiff has attempted to destroy diversity jurisdiction by fraudulently joining AmSouth to this lawsuit. A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant." Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996), overruled on other grounds, (quoting Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S. Ct. 35, 37 (1921)), abrogated on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000), cert. den., 106 U.S. 371 (2000). It is well-settled that the Court must disregard nominal or formal parties and determine jurisdiction based only upon the citizenship of the real parties to the controversy. Navarro Savings Ass'n v. Lee, 446 U.S. 458, 100 S. Ct. 1779 (1980). Thus, proper diversity jurisdiction "cannot be defeated by [the] fraudulent joinder of a residential defendant having no real connection to the controversy." Morgan v. Estate of Cook, 180 F. Supp. 2d 1301, 1303 (M.D. Ala. 2001) (quoting Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 297, 42 S.Ct. 35, 66 L.Ed. 144 (1921). Such joinder, used as a device to prevent the

defendant from exercising its right of removal, will not be treated as a legal obstacle to retention of the cause by the district court. Id. 257 U.S. at 98, 42 S. Ct. at 38; Bullock v. United Ben. Ins. Co., 165 F. Supp. 2d 1255, 1257 (M.D. Ala. 2001) ("When a defendant has been fraudulently joined, the court should disregard his or her citizenship for purposes of determining whether a case is removable based on diversity of citizenship"). A court testing a claim of fraudulent joinder must "(1) look to see whether there is no possibility the plaintiff can establish any cause of action against the resident defendant; and (2) look to see whether plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court." Cabalceta v. Standard Fruit Co., 883 F. 2d 1553, 1561 (11th Cir. 1989).

(2) **Plaintiff's General Allegations Against All Defendants Do Not Establish Claims Against AmSouth**.

Plaintiff alleges that she purchased major medical insurance coverage with AMS in September 1996.[4] (Second Amended Complaint, ¶ 5) The subject health insurance policy was established as an Alabama discretionary trust called "Prescription for Good Health Trust" (hereinafter "the Trust"). (Id. ¶ 6) Plaintiff alleges that AmSouth is liable to Plaintiff "as trustee for said [T]rust and as the primary policy owner of the group health policy of which Plaintiff was a participant." (Id.) Plaintiff only asserts two specific claims solely against AmSouth in the Second Amended Complaint: (1) breach of a common law fiduciary duty to the Plaintiff (Count 8); and (2) breach of the Prescription for Good Health Trust Agreement (hereinafter "the Trust Agreement") by failing to "provide group health insurance" (Count 9). (Id. at 39, 45) All remaining claims in the Second Amended Complaint are alleged generally against all defendants.

---

[4] AMS provides administrative services to UWLIC. These services include marketing and implementing the MedOne coverage at issue. As a result, the coverage is sometimes referred to herein as being provided "through" or "with" AMS.

Plaintiff also generally asserts that even though her insurance "was sold on the basis of it being a group policy, said Defendants did and would assess premiums and/or increases in premiums on the basis of individual risk factors. Further, said Defendants did fail and/or refuse to inform the Plaintiff that said premiums could be raised to such high levels that the Plaintiff would be forced to terminate the policy. . . ." (Id. ¶ 7) Plaintiff then alleges that "Defendants . . . did raise the Plaintiff's premium rates. The Plaintiff's monthly premium rate in September of 1996 was $153.89, and was increased in September of 1997 to $191.91. The premiums were raised to such a high level that the Plaintiff was no longer able to afford said coverage and was forced to cancel the policy." (Id. ¶ 8)

Despite Plaintiff's bald allegations, it is undisputed that Plaintiff was never charged a higher premium, nor did she pay a higher premium, than the initial monthly premium she paid for her coverage. In particular, the Removing Defendants' records show that Plaintiff's policy was terminated on May 31, 1997. (Plaintiff's Policy Data Page, Exh. C to Not. of Removal) Therefore, Plaintiff's insurance coverage was in force for only 9 months, from September 1996 through May 1997 and she was never charged a higher premium for her coverage.

Plaintiff further alleges that the premiums charged for her group health insurance were improperly calculated by all of the defendants, including AmSouth. AmSouth's responsibilities and duties with respect to the group health insurance at issue are embodied in the Trust Agreement. Contrary to Plaintiff's assertions, AmSouth has no responsibility for the administration of the health coverage at issue. (Trust Agreement, Exh. D to Not. of Removal) The Trust Agreement specifically states that "Trustee [AmSouth] will be the holder, owner and custodian of the contracts, but will not perform any administrative duties or responsibilities for such contracts. Such duties and responsibilities shall be delegated to a third party administrator

designated by [UWLIC] to perform such administrative duties." (Id. at p. 1)[5] Therefore, AmSouth had no involvement in, or authority over, the establishment of group health insurance rates, premiums or the terms of the group health insurance policies themselves. (Id.) Consequently, there is no possibility that the claims asserted generally against all Defendants are valid claims against AmSouth.

As noted above, the Second Amended Complaint asserts two (2) specific claims against AmSouth. (Id. ¶¶ 38-48) (Counts Eight and Nine) The Second Amended Complaint also contains the following counts against all Defendants, including AmSouth: (i) breach of contract, (ii) fraud, (iii) fraudulent concealment, (iv) conspiracy, (v) negligent and/or wanton conduct. (Id. ¶¶ 5-37). As shown below, each of these claims is groundless as applied to AmSouth.

**C. There is No Possibility that Plaintiff Can Establish The Claims Specifically Asserted Against AmSouth.**

Plaintiff specifically alleges that AmSouth breached both its common law fiduciary duty as well as certain duties under the Trust Agreement. (Second Amended Complaint, ¶¶ 38-48) (Counts Eight and Nine) Plaintiff's claim that AmSouth owes her a fiduciary duty outside or beyond the Trust is without merit because Plaintiff fails to cite any facts that would establish that a common law confidential relationship existed between herself and AmSouth. Specifically, Plaintiff did not repose trust or confidence in AmSouth, there was no intimate personal and business relationship between Plaintiff and AmSouth, and AmSouth did not have any superiority over Plaintiff. See Kite v. Kite, 444 So. 2d 863, 865 (Ala. Civ. App. 1983).

Moreover, Plaintiff's claim in Count Nine that AmSouth failed to "provide" group health insurance as required by the Trust Agreement is refuted by the clear terms of the Trust

---

5 The Trust Agreement designates UWLIC as the insurer and AMS as the administrator of the heath insurance coverage at issue. (Trust Agreement, p. 2).

Agreement. Plaintiff can point to no provision of the Trust Agreement which states that AmSouth must "provide" group health insurance. Instead, the Trust Agreement states "[t]he purpose of this Trust is to provide insurance programs for Participants through contracts issued to the Trustee by insurers or affiliates of insurers." (Id. at 1) (emphasis added) The trust agreement further provides that "[t]he Trustee will be the holder, owner and custodian of the contracts, but will not perform any administrative duties or responsibilities for such contracts." (Id. at 1) (emphasis added) Moreover, the trust agreement states that "[t]he Trustee shall not assume any responsibilities, nor be liable for collection, remittance, forwarding or payment of premium, nor shall it have any responsibility or liability to continue, renew, or replace coverage in the event of its cancellation or termination, nor shall the Trustee have any duty or responsibility with respect to processing, settlement, or payment of claims under the group insurance contracts issued to Trustee." (Id. at 2) (emphasis added)

Further any claim for breach of fiduciary duty is barred by Alabama's two (2) year statute of limitations. Norman v. Occupational Safety Association of Alabama Workmen's Compensation Fund, 811 So. 2d 492, 497 (Ala. 2001); ALA. CODE § 6-2-38(l). Specifically, the statutory limitations period allowed on a claim of breach of fiduciary duty in regard to a trust begins to run on the date of the termination of the trust relationship. McCormack v. AmSouth Bank, N.A., 759 So. 2d 538, 542-43 (Ala. 1999) (citing Tonsmeire v. AmSouth Bank, 659 So. 2d 601, 604 (Ala. 1995)).

Plaintiff's policy became effective September 1, 1996 and was terminated on May 31, 1997. (See Plaintiff's Policy Data Page). Because Plaintiff's policy terminated in 1997, her relationship with AmSouth and the Trust necessarily ended in 1997. Plaintiff filed her original Complaint on January 28, 2005, more than seven (7) full years after her policy terminated.

Plaintiff argues that her claims against AmSouth have been tolled by the Gadson class action. (See Plaintiff's Brief in Support of Mot. to Remand at 19-20) However, the class allegations were not filed in the Gadson case until July 9, 2002, more than five years after the termination of Plaintiff's policy. (See Exh. 3 attached hereto which consists of the complaint and as well as the first amended complaint wherein the plaintiff in that case first asserted class allegations) Consequently, the two (2) years statute of limitations has long since expired and Plaintiff's fiduciary duty claims against AmSouth are barred. ALA. CODE § 6-2-38(l).

Implicitly acknowledging that the two-year statute of limitations for breach of fiduciary duty claims bars Plaintiff's breach of fiduciary duty claims in this lawsuit, Plaintiff conclusorily asserts that a six-year statute of limitations period applies to claims for breach of fiduciary duty relating to a trust. (Plaintiff's Brief is Support of Mot. to Remand at 23) Plaintiff cites no case law in support of this proposition. As shown by the case law cited by the Removing Defendants, this is simply not the case. McCormack v. AmSouth Bank, N.A., 759 So. 2d 538, 542-43 (Ala. 1999) (citing Tonsmeire v. AmSouth Bank, 659 So. 2d 601, 604 (Ala. 1995)).

In a similar attempt to avoid the two-year statute of limitations applicable to breach of fiduciary duty claims, Plaintiff's counsel attempts to style Count Nine as a claim for breach of contract. It is undisputed that Plaintiff is not a party to the Trust Agreement. (See Trust Agreement) Instead, Plaintiff merely alleges that AmSouth breached certain duties owed to plaintiff under the Trust Agreement to Plaintiff as a beneficiary of the trust; thus, this claim is really one of breach of fiduciary duty. As such, it is barred by the two-year statute of limitations applicable to breach of fiduciary duty claims.

Last, even though it does not appear in her Second Amended Complaint, Plaintiff asserts in her Brief in Support of Motion to Remand that AmSouth "agreed to procure group health

insurance" for Plaintiff. (Plaintiff's Brief in Support of Mot. to Remand at 11) First, this argument should not be considered because the court is bound to only consider the allegations contained in the complaint, as amended, at the time of removal. See Bevels v. American States Ins. Co., 100 F. Supp. 2d 1309, 1311 (M.D. Ala. 2000) (". . . the propriety of removal should be considered based on the pleadings as of the date of removal."). Regardless, assuming, *arguendo*, that Plaintiff could argue this alleged duty and also that a six-year statute of limitations period applied to such a claim, the statute of limitations has still run on such a claim.

The coverage at hand was procured no later than September 1, 1996, the date Plaintiff's coverage began. Thus, any breach of a duty to procure insurance occurred no later than September 1, 1996. The Gadson class allegations were filed on July 9, 2002, almost six years later. Further, Plaintiff opted out of the class on August 11, 2004, which ended any alleged tolling. (See Plaintiff's Brief in Support of Mot. to Remand at 19-20) The Complaint in this matter was not filed until January 10, 2005, approximately six months after Plaintiff opted out of the Gadson class. Moreover, the First Amended Complaint, which was the first complaint to include Count 9 for breach of the Trust Agreement was not filed until April 14, 2005, over eight months after Plaintiff opted out of the Gadson class. As such, even if Gadson tolled the statute of limitations, Plaintiff cannot state a claim for breach of contract for failure to procure group insurance because the statute of limitations has run. Thus, there is no possibility that Plaintiff can establish this claim for breach of contract against AmSouth.

**D. There is Also No Possibility That Plaintiff Can State Any Remaining Tort Claims Against Plaintiff Because These Claims Are Barred By The Statute Of Limitations.**

As noted above, Counts Eight and Nine are the only claims asserted solely and directly against Resident Defendant AmSouth. (Second Amended Complaint) The remaining allegations in the Second Amended Complaint are asserted against all Defendants and fail to differentiate

between and amongst them in any way. The Court need look no further than the breach of fiduciary duty claims because the remaining claims are insufficiently pled against AmSouth and are, in fact, properly directed only to Defendants AMS and UWLIC as established above. However, out of an abundance of caution, the Removing Defendants show below that each and every one of the remaining counts fails to state a claim against AmSouth for the additional reason that they are barred by the applicable statute of limitations.

As explained in more detail above, AmSouth did not have any authority to administer Plaintiff's health insurance coverage, assess premiums, and/or raise the Plaintiff's health insurance premiums. (Trust Agreement). Further, as shown by the orders attached by Plaintiff as Exhibit D to Plaintiff's Motion to Remand, state courts have regularly dismissed all claims against AmSouth other than the claims for breach of fiduciary duty. Thus, it is well-established that there is not a possibility that Plaintiff has established any valid claims against AmSouth.

Moreover, as shown below, all of Plaintiff's tort claims are barred by the statute of limitations. Plaintiff's claims against Resident Defendant AmSouth all relate to actions that took place at the point of sale of the policy, which occurred in 1996, or at the time that Plaintiff's premiums were allegedly raised in 1997.[6] (Second Amended Complaint, ¶ 8) The limitations period for claims of fraud, fraudulent suppression, conspiracy, and negligent and/or wanton conduct is two years. Alabama Code § 6-2-38.

**Negligence & Wantonness:** In her motion to remand, Plaintiff concedes that her claims for negligence and wantonness are barred by the statute of limitations and are due to be dismissed. (See Plaintiff's Brief in Support of Motion to Remand at 19)

---

6 Plaintiff paid the same amount for her health insurance premiums the entire time her policy was in force, from September 1996 to May 1997.

**Fraud & Fraudulent Concealment:** Alabama law provides that the statute of limitations for fraud commences "once the fraud is readily discoverable or the potential plaintiff is on notice that a fraud may have been perpetrated." Kelly v. A.L. Williams Corp., 669 F. Supp. 1058, 1062 (N.D. Ala. 1986). The standard for accrual of fraud claims is objective, and the statute of limitations begins to run once facts are known or available to the plaintiff which would lead to the discovery of the fraud in the exercise of reasonable diligence. ALA. CODE § 6-2-3; Boros v. Palmer, 472 So. 2d 1020, 1023 (Ala. 1985) ("[F]acts constituting the fraud are to be considered discovered when they ought to be discovered, when such facts come to knowledge as to provoke inquiry in a person of ordinary prudence, and which, if followed up, would lead to the discovery of the fraud."); Phillips v. Amoco Oil Co., 799 F. 2d 1464, 1469 (11th Cir. 1986). An identical standard applies to claims for fraudulent concealment. See Davant v. United Land Corp., 896 So. 2d 475, 490 (Ala. 2004).

Moreover, it is the affirmative burden of the party alleging fraud to prove her lack of notice in order to toll the statute of limitations. Lampliter Dinner Theater, Inc. v. Liberty Mutual Ins. Co., 792 F. 2d 1036, 1043 (11th Cir. 1986) ("The burden was squarely on [plaintiff] to prove that it was unaware of facts that would lead a reasonable person to suspect fraud."); Johnson v. Shenandoah Life Ins. Co., 281 So. 2d 636, 642 (Ala. 1973) (Plaintiff must show what prevented discovery of the fraud before the bar of the statute of limitations was complete and must acquit himself of all knowledge of facts which ought to put him on inquiry.). Similarly, to sustain a claim of fraudulent concealment Plaintiff must prove, among other elements, "'concealment or nondisclosure of material facts by the defendant.'" Auto-Owners Ins. Co. v. Abston, 822 So. 2d 1187, 1197 (Ala. 2001) (quoting Foremost Ins. Co. v. Parham, 693 So. 2d 409, 423 (Ala. 1997)).

Here, Plaintiff claims to have been harmed at the point of sale in 1996 and when her premiums were allegedly increased in 1997. (Second Amended Complaint, ¶ 8) Plaintiff alleges that her "premiums were raised to such a high level" that she was "forced to cancel the policy" in 1997. (Id.; Policy Data Page) Plaintiff was put on notice as many as seven (7) years ago, when her premiums allegedly increased and she was allegedly forced to cancel the policy in 1997 "that a fraud may have been perpetrated." A.L. Williams Corp., 669 F. Supp. at 1062. Plaintiff's fraud and fraudulent concealment claims are, therefore, barred by the statute of limitations.[7]

**Conspiracy:** The limitations period for conspiracy "begins to run when the statutory period of limitation for the underlying tort begins to run." Spain v. Brown & Williamson Tobacco Corp., 872 So. 2d 101, 126 (Ala. 2003). As with Plaintiff's claims for fraud, fraudulent concealment, negligence and/or wantonness, Plaintiff's conspiracy claim began to run seven (7) years ago, when her premiums increased and she was allegedly forced to cancel the policy.

In addition to being barred by the statute of limitations, Plaintiff's conspiracy claim fails for lack of an underlying claim. Barber v. Business Prods. Center, 677 So. 2d 223, 228 (Ala. 1996); Baker v. Hanks, 661 So. 2d 1155, 1157 (Ala. 1995) ("A conspiracy claim must fail if the

---

[7] Plaintiff's claims against AmSouth are also improper for the additional reason that Plaintiff inadequately identified the persons responsible for the alleged fraud and concealment in her Complaint or any of the amended Complaints. It is well-settled that:

> **Courts interpret Rule 9(b) as requiring a complaint filed against multiple defendants to distinguish among defendants and specify their respective role in the alleged fraud**. The courts reason that because fair notice is perhaps the most basic consideration underlying Rule 9(b), a plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the scheme. **Accordingly, a plaintiff does not satisfy this requirement by simply grouping the defendants together by vaguely alleging that the "defendants" [committed fraud].**

McAllister Towing & Transportation Co. v. Thorn's Diesel Service, Inc., 131 F. Supp. 2d 1296, 1301 (M.D. Ala. 2001) (citations omitted) (emphasis added).

underlying act itself does not support an action."); McLemore v. Ford Motor Co., 628 So. 2d 548, 550 (Ala. 1993) ("conspiracy itself furnishes no cause of action.").

**E. Plaintiff's Claims Against Fictitious Parties Are to be Disregarded:**

Plaintiff also alleges causes of action against fictitious defendants. Pursuant to 28 U.S.C. §1441(a), the citizenship of fictitious defendants must be disregarded, as they have been sued under fictitious names.

Based on the foregoing facts, there is no possibility that Plaintiff can establish a cause of action against Resident Defendant AmSouth, and therefore, the joinder of Resident Defendant AmSouth is fraudulent. Consequently, it is evident that complete diversity of jurisdiction exists between the Plaintiff and the only properly-joined defendants, AMS and UWLIC.

## III. CONCLUSION

Based on the foregoing, the Removing Defendants timely removed this matter. Further, the Removing Defendants have shown by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. Last, the Removing Defendants have shown that AmSouth has been fraudulently joined in this matter to defeat diversity jurisdiction.

**WHEREFORE, PREMISES CONSIDERED,** Defendants AMS and UWLIC respectfully request that the court deny Plaintiff's Motion to Remand.

Respectfully submitted,

/s / Michael J.Clemmer________________
James E. Fleenor, Jr. (FLE013)
Harlan F. Winn, III (WIN023)
Michael J. Clemmer (MJC029)
Attorneys for Defendants UWLIC and AMS

**OF COUNSEL:**

**BATTLE FLEENOR GREEN**
**WINN & CLEMMER LLP**
The Financial Center
505 North 20th Street
Suite 1150
Birmingham, Alabama 35203
Telephone: (205) 397-8160
Fax: (205) 397-8179
Email: jfleenor@bfgwc.com
hwinn@bfgwc.com
mclemmer@bfgwc.com

Fred D. Gray, Jr. (GRA044)
**GRAY, LANGFORD, SAPP, MCGOWAN,**
**GRAY & NATHANSON**
108 Eastside St.
PO Box 830239
Tuskegee, AL 36083-0239
Telephone: (334) 727-4830
Fax: (334) 727 5877

Ricky J. McKinney (MCK030)
**BURR & FORMAN LLP**
3100 SouthTrust Tower
420 20th Street North
Birmingham, AL 35203
Telephone: (205) 251-3000
Fax: (205) 458-5100

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served on the following counsel of record by electronically filing with the Clerk of the Court using the CM/ECF system:

Ted L. Mann, Esq.
Mann, Cowan & Potter, P.C.
Suite 601
2000-B SouthBridge Parkway
Birmingham, Alabama 35209

on this the 30th day of June, 2005.

/s / Michael J.Clemmer_________________
OF COUNSEL