**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PAULETTE FOSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | 3:05-cv-488-MEF-VPM |
| AMERICAN MEDICAL SECURITY, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO REMAND**

COMES NOW the Plaintiff, Paulette Foston, and files this Reply Brief in Support of her Motion to Remand. The Plaintiff adopts and incorporates her Motion to Remand and brief in support thereof along with all previous Evidentiary Submissions.

**I. Defendants' Opposition to Plaintiff's Motion to Remand Proves the Untimeliness of the Removal of this Case**

The Defendants now admit in their Opposition to Plaintiff's Motion to Remand that on four occasions prior to the removal of this case they have removed identical claims and alleged that the amount in controversy was satisfied and AmSouth Bank was fraudulently joined as a defendant. To avoid the thirty day removal requirement of 28 U.S.C. § 1446(b), the Defendants argue that the United States District Court for the Middle District of Alabama in *Robert T. Bennett v. American Medical Security* and *Vivian Gadson v. United Wisconsin Life Ins. Co.*, remanded these cases because the Defendants did not meet their burden of showing the amount in controversy had been met.

The Defendants' arguments in opposition to the Plaintiff's Motion to Remand in the case *sub*

*judice*, miss their mark. It is not the fact that the United States District Court remanded *Bennett* and *Gadson* that is instructive. American Medical Security and United Wisconsin Life Insurance Company's knowledge that those cases were potentially removable based on the amount in controversy was highly instructive. As the Plaintiff previously pointed out in her Motion to Remand, these cases indicate a "clue" that this case may have been removable upon its receipt by the Defendants in January 2005. Yet, the Defendants waited to take action outside thirty days from initial receipt of the Summons and Complaint.

As the Plaintiff pointed out in her Brief in Support of Motion to Remand, the Plaintiff's responses to the Request for Admissions are not instructive as to this Court's jurisdiction. The Plaintiff simply refused to stipulate to a specified damage limitation. In *Buchanan v. Lott*, 255 F.Supp.2d 326 (D.C. NJ 2003), the district court held that the plaintiff's attorney to refuse to so stipulate did not bear on the amount in controversy.

The removing Defendants in this case knew in four previous cases that the amount in controversy had allegedly been met. It is their knowledge and appreciation of this potential amount in controversy that required action on their part within thirty days of receiving the initial Summons and Complaint. The Court's statements in *Gadson* and *Bennett* indicate that the removing Defendants had not met their burden of establishing the amount in controversy. That is not to say that the removing Defendants had not become aware that the amount in controversy might be established in this case. Armed with its previous knowledge and actions, the removing Defendants had to be proactive in determining whether the amount in controversy in this case had been met within thirty days of receiving the initial Summons and Complaint. *Kanashiro v. No. American Co. for Life & Health Ins.*, 496 F.Supp.452 (D.C. Haw. 1980).

## II. <u>The Defendants have Failed to Prove AmSouth Bank was Fraudulently Joined to Defeat Federal Jurisdiction</u>

Interestingly, the removing Defendants failed to address the Court's decision in *Hicks v. United Wisconsin Life Ins. Co., et al.*, in the United States District Court for the Southern District of Alabama, Southern Division, CV-02-0469-P-M, where the Court specifically held, in an identical case, that AmSouth Bank had not been fraudulently joined. The Defendants admit AmSouth is an Alabama corporation doing business in Alabama. (P. 7 of Defendants' Opposition to Plaintiff's Motion to Remand.)

### A. <u>The Plaintiff Stated Specific Allegations Against All Defendants, Including AmSouth Bank</u>

The Defendants take issue with the wording of Plaintiff's Complaint. The Second Amended Complaint sets forth nine specific claims as well as eleven paragraphs of specific information with regard to the Plaintiff's cause of action. The Plaintiff specifically names AmSouth Bank as a Defendant in each of the nine counts of the Second Amended Complaint. In Counts 1-3, the Plaintiff states, ". . . that the above-described conduct by the agent, servant, employee or representative of Defendants American Medical, United Wisconsin, AmSouth Bank . . ." engaged in certain wrongful conduct as alleged. In Counts 4-6, the Plaintiff states that the ". . . Defendants, American Medical, United Wisconsin, AmSouth Bank . . ." engaged in certain wrongful conduct as alleged. Only in Counts 8 and 9 does the Plaintiff specifically limit the cause of action to AmSouth Bank. (See Second Amended Complaint.)

While this case was pending in state court, the Defendants never file a motion for more definite statement. In fact, the Defendants' actions indicate an intimate working knowledge of the

Plaintiff's claims. This Court should examine the Second Amended Complaint under the well pleaded complaint rule, in its entirety from the four corners of the document and not in isolation, as suggested by the Defendants. *Anderson v. H & R Block, Inc.*, 287 F.3d 1038 (11th Cir. 2002) and *Hooper v. Albany Int'l. Corp.*, 149 F.Supp.2d 1315 (M.D. Ala. 2001.) Generally speaking, the well pleaded complaint rule makes the plaintiff the master of his own claim and he may avoid federal jurisdiction by exclusive reliance on state law. *Household Bank v. J. F. S. Group,* 191 F.Supp.2d 1292 (M.D. Ala. 2002).

The Plaintiffs' Second Amended Complaint extensively makes claims against AmSouth Bank for its intimate involvement in this transaction.

The Defendants, in their brief, also state facts that are simply not true. For example, the Defendants allege that the Plaintiff was not a party to the trust agreement. The stated purpose of the trust was to ". . . provide group insurance programs for participants." It is undisputed that the Plaintiff was a participant in the trust arrangement. The trust agreement goes on to state that the participants ". . . authorized the trustee to procure contracts of insurance. . . ." The participants, including the Plaintiff, may not have been signatory parties, but they were certainly intended third party beneficiaries of the trust agreement and of AmSouth Bank's obligations to provide group insurance policies. (See Exhibit B to Plaintiff's Evidentiary Submission in Support of Remand.) AmSouth's intimate participation in this insurance transaction is further illustrated by the "Notice of Insurance Administrator" which is contained in the insurance policy issued to the Plaintiff. (See Exhibit 1 to this Reply Brief.) This page of the insurance contract indicates that the group policy is issued to AmSouth Bank. The Plaintiff has a direct contractual link to AmSouth Bank by virtue of the insurance policy and the Prescription for Good Health Trust Agreement. Furthermore, the

"Notice of Insurance Administrator" places no limitations on the activities or conduct of AmSouth Bank. (See Exhibit 1.)

The Defendants' statements that the Plaintiff was never charged a higher premium also fall short of true facts. Attached as Exhibit 2 to this Reply Brief is a document produced by the Defendants which indicates that the renewal premium for the Plaintiff was increased on September 1, 1997. The document states, "Actual premium increases 1996-1997." (See Exhibit 2.) If the Plaintiff had never been through a renewal and charged a higher premium, then the Defendants would have produced a document similar to Exhibit 3.[1] This document raises another suspicious doubt the Defendant is not shooting straight with this Court. However, even if this Court accepts the Defendants' argument that the policy was terminated on May 31, 1997, the statute of limitations on the Plaintiff's claims would not bar her recovery.

### B. <u>The Plaintiff has Stated Claims that Survive the Statute of Limitations</u>

In reading the Defendants' opposition to the Plaintiff's Motion to Remand, it was not surprising that the Defendants did not address the effect the *Vivian Gadson* class action had on the tolling of the statute of limitations of class members. The Defendants did not challenge the legal authority cited by the Plaintiff in her Motion to Remand that equitable tolling by virtue of the filing of the *Gadson* class action benefitted the Plaintiff with respect to her claims against the Defendants. Instead, the Defendants focused on specific dates in an effort to argue that the Plaintiff states no cause of action against the Defendants.

**Again, the Defendants attempt a sleight of hand.** In arguing that the Plaintiff's breach of

---

[1] This document was produced on one of the undersigned's clients, Anthony Stinson, indicating his policy was never renewed and was terminated on April 30, 1997.

contract claim is barred by the statute of limitations, the Defendants assert that the breach of contract became actionable in September 1996 when the policy was initially sold. In so arguing, the Defendants assert that the Plaintiff's breach of contract limitations period expired in April 2002, prior to the filing of the *Gadson* class action. Yet, in their Notice of Removal, the Defendants argued that ". . . Plaintiff's breach of contract claim expired six years later in 2003, well before Plaintiff filed her original Complaint in January 2005." (Paragraph 31, p. 12 of Notice of Removal.) Obviously, the Defendants did not realize that the United States Supreme Court and Supreme Court of Alabama recognize equitable tolling of limitations periods when class actions are filed. *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) and *First Baptist Church of Citronelle v. Citronelle-Mobile Gathering, Inc.*, 409 So.2d 727 (Ala. 1981).

Now that the Plaintiff has argued the equitable tolling of the *Gadson* class action, the Defendants have fallen back to 1996 as the jump off point for determining the Plaintiff's statute of limitations for contract claims. In Alabama, a breach of contract action is governed by a six year statute of limitations. The statute of limitations does not begin running in an insurance case until some action is taken constituting a breach of the agreement. *Hackleburg Church of Christ v. Great American Ins. Companies*, 675 So.2d 1309 (Ala. 1995). In *Hackleburg*, the plaintiff sued for breach of contract for failure of the insurance company to pay certain claims under the policy. The insurance company argued that the breach of contract occurred when the insurance company refused to pay damages sustained by the church. The Court did not determine that the breach occurred from the date the policy was sold. In the instant case, the breach of contract occurred, at its earliest, when the group policy premiums were assessed for the Plaintiff to include individual factors. This could not have occurred until September 1, 1997, the first anniversary of the policy. (See Exhibit 2.)

Therefore, if the Plaintiff's breach of contract action, as initially alleged by the Defendants in their Notice of Removal, did not accrue until 1997, the Plaintiff's breach of contract claim survives. Assuming the May 31, 1997 termination date alleged by the Defendants as the time to initiate the cause of action, the Plaintiff would have had until May 31, 2003 to commence her action but for the filing of the *Gadson* class action. The *Gadson* class action was filed on July 9, 2002, thirty-nine days into the Plaintiff's fifth year to initiate a breach of contract claim. The Plaintiff remained a member of the *Gadson* class action until August 12, 2004. The Plaintiff then had 336 days to file a cause of action for breach of contract. The Plaintiff filed well within the six year statute of limitations, after reduction of the tolling period.

The Defendants have failed to produce any legal authority that the Plaintiff's breach of fiduciary duty claim is barred by any statute of limitations. As the Defendant acknowledge in its Notice of Removal, the breach of fiduciary duty cause of action accrues when the trust relationship is terminated. As the Plaintiff has previously pointed out, the Prescription for Good Health Trust Agreement is still viable. Therefore, the continuation of the trust itself gives rise to a "possible" claim by the Plaintiff within a two- or six-year applicable statute of limitations.

### C. <u>The Plaintiff's Fraud Claims Are Viable</u>

The Defendants in cursory fashion address the Plaintiff's claims for fraud and fraudulent concealment. The Defendants have offered no proof of a single document that would have placed the Plaintiff on notice of a claim – outside her receipt of the class notice in the *Gadson* class action. The Plaintiff believes she has adequately stated in her original Motion to Remand and brief that the nature of the increase in the premium was the fraudulent element incapable of discovery. The

Defendants have yet to produce one shred of evidence that the Plaintiff knew or should have known of the methods employed by the Defendants in assessing premiums on an individual basis.

Judge Inge Johnson reached this same conclusion in an identical case she remanded on June 28, 2005. In *Dawn Czermak v. American Medical Security, Inc.*, in the United States District Court for the Northern District of Alabama, Northwestern Division, 3:05-cv-01269-IPJ, Judge Johnson stated:

> This Court has nothing before it to determine when the Plaintiff should have discovered the alleged fraud. The Court considers this argument to go to the merits of the Plaintiff's claims against the Defendants, which is not the issue before this Court. The fact that Plaintiff may not ultimately prevail against any of the Defendants, including AmSouth, is not a proper inquiry for this Court in considering a motion to remand.

(See Exhibit B to Plaintiff's Supplemental Brief in Support of Motion to Remand.)

In *Barkley v. State Farm Fire & Casualty Co., et al.*, in the United States District Court for the Southern District of Alabama, Northern Division, Magistrate Judge Sonya Bivens remanded a lawsuit removed from the Circuit Court of Marengo County. On June 29, 2005, she issued a memorandum opinion in which she addressed the plaintiff's claims in light of the Defendants' argument that an in-state agent had been fraudulently joined.[2] In remanding the case to state court, Judge Bivens noted in analyzing each of the claims made against the in-state agent:

> Plaintiffs' fraud claims yield a different result. Plaintiffs contend that agent McCampbell conducted an inspection of their home and represented that their home had no structural damage, that State Farm offered them a policy of home insurance and that they relied upon the representation to their detriment.

Judge Bivens rejected the Defendants' attempt to analyze the merits of the Plaintiff's fraud claim, when the claim should have been discovered and whether the Plaintiffs' reliance was reasonable

[2] The undersigned counsel represents the Barkleys in the aforementioned action.

under the circumstances. In rejecting the Defendants' position, Judge Bivens stated:

> Defendants state that in order for fraud to be proven, reliance and damage must be present, and that the reliance must be reasonable under the circumstances. However, whether reliance is reasonable in light of the facts of a particular case is a question of fact for the jury. *Citing Foremost Ins. Co. v. Parham*, 693 So.2d 409, 412 (Ala. 1997). Whether said reliance is reasonable requires a determination under all the facts and "all of the circumstances surrounding a transaction, including the mental capacity, educational capacity, relative sophistication and bargaining power of the parties." *Id.* In reviewing the complaint and allegations contained therein, the Court finds the Plaintiffs' claims are reasonable reliance based upon McCampbell's representations are arguable under state law, and thus, Plaintiffs have at least presented colorable claims against McCampbell. Therefore, the Court concludes that State Farm has not met the heavy burden of proving the Plaintiffs fraudulently joined Defendant McCampbell as a defendant in the present action.

The Defendants concede the point that the tolling provisions of Ala. Code § 6-2-3 would toll a fraud or fraudulent concealment claim made by the Plaintiff. In fact, there is no limitation of the time during which a claim can be tolled under this statute. The Defendants do not deny AmSouth's duty to the Plaintiff to convey truthful information regarding this transaction. Nor do the Defendants take issue with the proposition set forth in the Plaintiff's brief that the "question of when a plaintiff should have discovered the existence of a cause of action for fraud is almost always a question of fact." *Johnson v. Life Ins. Co.*, 581 So.2d 438 (Ala. 1991).

In their opposition to remand, the Defendants steer clear of any analysis or comparison of the Court's decision in *Hicks v. United Wisconsin Life.* As Magistrate Judge Milling pointed out, AmSouth was an integral player in a business arrangement established for the purpose of selling group health insurance in the state of Alabama. In so doing, the Defendants wed themselves to an Alabama resident which subjects them to liability in our state courts.

**Conclusion**

As this Court found in the *Bennett* and *Gadson* decisions remanding similar cases, the Defendants have failed to carry their burden of establishing the amount in controversy. As the United States District Court for the Southern District held in *Hicks v. United Wisconsin Life*, the Defendants failed to carry their burden of proving fraudulent joinder. The Defendants' request of this Court to analyze the merits of the Plaintiff's claims is outside this Court's responsibility in the context of the Plaintiff's Motion to Remand. The Plaintiff has stated "possible" claims against AmSouth Bank. The Plaintiff need not state a winning case, only a possible one.

Plaintiff respectfully requests this Court grants her Motion to Remand sending this case back to the state court from which it was removed.

s/Ted L. Mann
Ted L. Mann
AL State Bar No.: ASB-2219-N36T
Attorney for Plaintiff, Paulette Foston
Mann, Cowan & Potter, P.C.
2000-B SouthBridge Pkwy., Ste. 601
Birmingham, AL 35209
Phone: (205) 879-9661
Fax: (205) 879-9663
E-mail: ted@mcplaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Keith Thomas, Esq.
P. O. Box 830899
Tuskegee, AL 36083

James E. Fleenor, Jr., Esq.
Harlan F. Winn, III, Esq.
Michael J. Clemmer, Esq.
Battle, Fleenor, Green, Winn & Clemmer, LLP
Financial Center, Ste. 1150
505 N. 20th St.
Birmingham, AL 35203

Ricky J. McKinney, Esq.
D. Brian O'Dell, Esq.
Christian W. Hancock, Esq.
Burr & Forman, LLP
3100 SouthTrust Tower
420 N. 20th St.
Birmingham, AL 35203

Fred D. Gray, Jr., Esq.
Stanley F. Gray, Esq.
Gray, Langford, Sapp
P.O. Box 830239
Tuskegee, AL 36083

I hereby certify that I have mailed by U. S. Postal Service the document to the following non-CM/ECF participants:

(none)

Respectfully submitted,

s/Ted L. Mann
Ted L. Mann
Mann, Cowan & Potter, P.C.
2000-B SouthBridge Pkwy., Ste. 601
Birmingham, AL 35209
Phone: (205) 879-9661
Fax: (205) 879-9663
E-mail: ted@mcplaw.com
AL State Bar No.: ASB-2219-N36T